May it please the Court. My name is Barbara Figari and I represent the appellant in this case, Ramona Lum Rocheleau. I will keep track of my time but I would like to reserve five minutes for rebuttal. We'll try to help you but keep your eye on the clock. Thank you, Your Honor. January 20th, 2010. January 24th, 2010. January 29th, 2010. February 4th, 2010. February 8th, 2010. February 11th, 2010. These are the dates that the appellate, Ramona Lum Rocheleau, last made internal and external complaints of illegal activity including OFCCP violations and SEC violations and payroll tax fraud to Microsemi and to four separate federal agencies including the Securities and Exchange Commission on February 11th, 2010. Counsel, with respect, we know that your client made these complaints but I guess the question I have is she needs to show that there was a violation of Section 1514A, right? That is correct. What's the best evidence that you have that she, in good faith, believed that that had occurred? Several things, Your Honor. First, under 1514A, two of the items, two of the six enumerated items that an employee may complain about are mail fraud and wire fraud. In this case, the complainant made complaints to Microsemi and to the OFCCP directly that Microsemi engaged in mail fraud and wire fraud. Those are very broad terms. What specifically did she claim had happened that she was convinced constituted securities fraud? With respect, Your Honor, under Section 1514A, she needed to complain about mail fraud or wire fraud and she complained that data was falsified, data constituting a violation of OFCCP. What data was that? It was the hiring data and the equal opportunity diversity data that Microsemi was required to keep pursuant to OFCCP regulation. And the reason that Microsemi needed to not only keep the data, but also comply with the OFCCP regulation. And so it's your view that if your client said these things occurred, that we're supposed to assume that the government would have terminated its ability to contract with the government if she reported these things to us. Is that what we're supposed to believe? No, Your Honor. What is required to be proven under the statute is that my client had both an objectively reasonable belief and a subjectively reasonable belief that these items were, in fact, occurring. Okay, but not only that they were occurring, but that they were material and, in fact, constituted securities fraud, right? Not that they constituted securities fraud, Your Honor. That they constituted mail fraud or wire fraud. The two-step process. She's saying mail fraud, which in itself would then constitute securities fraud, right? It's mail fraud, which under 1514A is its own separate category. Under 1514A, an employee may complain about one of six enumerated categories. And those six categories were discussed both in the Sylvester case, the Day v. Staples case that Microsemi relies upon, and also in this Court's opinion in Van Asdale. What an employee may complain about includes, one, mail fraud, two, wire fraud, three, bank fraud. But is fraud in that sense just simply a false statement? I thought the general understanding of mail fraud are fraudulent statements designed to deprive the victim of money or property. Yes, Your Honor. It would be a fraudulent statement or a fraudulent scheme. And that's something that this Court found in Van Asdale. The employees there complained that there was a patented issue, and there was potential litigation related to that patent. And in that case, the company did not inform the shareholders about that potential litigation, and the Court found fraud. Similarly, in Sylvester, which no, no, Your Honor, it found potential fraud to shareholders. In that the shareholders would have found it relevant that a patent critical to the company's operation and to the acquisition of a subsidiary in a merger, that shareholders to the company that acquired the other company would have found the threat to that patent material in terms of the stock price. What evidence was there in the record, though, that this information that allegedly was not provided to the government would have been material? I mean, material meaning not just material that it was information not disclosed, but material that it would actually lead to termination of these contracts. In this case, we have the best possible measure of whether this was objective, and that is that the OFCCP did conduct an investigation into Ms. Rocheleau's complaints, and that it did find that MicroSemi was violating the OFCCP regulations and required MicroSemi to enter into a conciliation agreement where its hiring practices were therefore audited for a period of one to two years to ensure that it continued to comply. I think that would hurt your case because it shows that what they didn't do is they didn't terminate the contract. No, Your Honor. In this case, Ms. Rocheleau needed to show an objective, reasonable belief that it could, and that is only if it related to shareholder fraud. Her complaints to the OFCCP manifested themselves in two separate of the six areas under the Sarbanes-Oxley Act, the communication of the data via mail and via the Internet. The communication of the false data constituted mail fraud and wire fraud. I know it constitutes a transmission, but getting back to Judge Corman's point, there has to be a scheme to deprive them of property, money or property. That's in the statute 1341 and 1343. So what was the money or property to be deprived under the scheme of not handling affirmative action hiring policies correctly? The money or property that was at issue would have been the contracts with the United States government. Right. So we're back to that again. So, again, what is the evidence that this scheme was, if we can call it that, this scheme was intended to ensure that these contracts would continue, that it wouldn't be terminated? Because, Mike Grissom, I needed to make sure that they continue to be allowed to contract with the United States government. I understand that, but what's the evidence that suggests that this evidence that was or this information that was not being provided to the government, that the failure to do that would in fact lead to, my term here, the death penalty for this corporation? You know, we have all kinds of things, all kinds of rules companies have to comply with. They don't always end up being the death penalty. This would be the death penalty. What evidence in the record was there that the death penalty would actually happen here? The evidence in the record is that it is one of the punishments the OFCCP could have given to MicroSemi for its violation of these statutes. In this case, ultimately, the OFCCP chose not to give, in your words, the death penalty to this company, but it could have. And that's something that MicroSemi should have alerted its shareholders to. And we know that because in MicroSemi's 10-K report, MicroSemi did tell its shareholders when it was under audit by the IRS, did tell its shareholders when it was under audit by federal trade organizations. But, Counselor, with respect, your client made her report before the 10-K was even due. So how can she blame them for not telling shareholders when they had no obligation to disclose anything to the shareholders at the time period, by the time period in which your client sent the report in? In this case, it's relevant to show that this was something that should have been reported, that it did relate to shareholder fraud. But you're saying that they did tell it later when they had an obligation to report it. My question is, she made this report before they had an obligation to tell the shareholders. So where's the problem? What did they do wrong? Your Honor, respectfully, they never did tell the shareholders about the OFCCP. I thought you just said they did tell the shareholders. No, Your Honor. They told the shareholders about other audits. They neglected to tell the shareholders about the OFCCP audit. And that is one of the key issues in the case. But doesn't that go back to what Judge Owens and I think actually Judge Corman brought the same thing up, and that's the materiality issue. If there was no realistic belief on the part of Micro Semi Corporation that they were going to get the death penalty if they didn't do this, if they treated this as a de minimis non curate lex, is that a violation of 1514A? Yes, Your Honor, because it could have been. And that's the question is, was it reasonable? And as the ARB has stated in its Sylvester decision, and as the Second, Third, and Sixth Circuits have said, the question of whether it was reasonable is a fact question. And that's what we're here on. This is an appeal from the grant of a summary judgment motion. The question of whether it was reasonable, differing minds can certainly disagree. That should have been within the province of the jury in this case. And that question was never sent to the jury. This is an issue of whether her belief was objectively reasonable is a question of fact. Well, take the point I made a minute ago. If the judge saw that your allegation was that there was no disclosure to shareholders, but there was no obligation to disclosure, including to the shareholders at the time your client made the report because it wasn't due yet, wouldn't the judge be entitled to say, well, this can't possibly be a material that wasn't even due yet? That wouldn't go to the jury, would it? No, Your Honor. The judge was incorrect because that is one of the six enumerated categories under 1514A. Let's say that the judge was correct on the shareholder fraud issue, assuming that is correct. And that's your best issue, you said, right? The shareholder fraud? No, Your Honor. The mail fraud and wire fraud is our best issue. Okay. But aren't those kind of part and parcel of the same thing? No, Your Honor. There are six different enumerated categories. And if, setting aside the shareholder fraud issue, Ms. Roshula complained that the data sent to the OFCCP was false data. It was communicated via mail. It was communicated via the Internet. That in and of itself implicates mail fraud and wire fraud under Section 1514A and constitutes an objectively reasonable belief that MicroSemi was engaged in fraudulent activity under the statute. I thought your client alleged that she was directed to scrub this data, but she didn't do so. She did not do so. So if she didn't do so and it was reported, then where was the fraud? Because someone else, after she refused to do so, a more junior employee was instructed to scrub the data. Did someone scrub the data? I mean, did someone scrub the data? Yes, Your Honor. And that was alleged? Yes, Your Honor. At this point, I'd like to reserve the balance of my time. Okay, sure. Thank you, Your Honor. Counsel? Good afternoon, Your Honors. May it please the Court, Bruce May of Stuart K. and LLP for appellee MicroSemi Corporation. Your Honors, I'd like to just briefly comment on a few of the factual assertions that we just heard. And then if the Court has no further questions of me, I'd like to just briefly recite some of the key points underlying MicroSemi's position. There is not a shred of evidence in this record that anything false was submitted by MicroSemi, by anybody at MicroSemi, to any government agency. My learned opponent says that information was sent by mail and by Internet. You'll search in vain to find any evidence in the record that such was done. And at her deposition, plaintiff testified that no one asked her to falsify any data. And, in fact, she never did so. Instead, her point was someone, namely a consultant used for affirmative action compliance, had asked her to scrub data. And that's all it was to her testimony. The word scrub was used. And we've cited some trade dictionaries which all agree scrub means to clean up data, meaning remove errors and inconsistencies. It has nothing to do with falsification. So this is one instance, Your Honor, where there's a lot of time been spent on this appeal and the briefs on issues that are not fairly presented to this Court. This appeal presents really one question, and that is whether the District Court properly found that a reasonable person in Ms. Rocheleau's shoes would not believe that MicroSemi had violated or was planning to violate or was intending to violate any of the six predicate offenses under Section 806 of SOX, Sarbanes-Oxley, or Section 922 of the Dodd-Frank Act. Whistleblower protection of those laws is limited to claimants who have an objectively reasonable belief that one of those six predicate offenses has been committed. And that determination is usually decided by the judge or jury? Well, when the facts are undisputed, it presents a question of law for the judge, for the Court. This is an instance where the summary judgment procedure is an effective tool for achieving justice while preserving the Court's precious resources. This Court was fully informed, I should say, the Court below was fully informed of the 130 facts that we put forth. Only 11 were purportedly disputed. At pages 20 through 27 of our brief, I feel we refute every point there in which the claimant asserts that those facts were disputed. And what I see as I look at this case, which is now entering its seventh year, is the appellant's theory has sort of boiled down to this one theory, which is, you did all these things, and then you violated your SEC reporting obligations by not disclosing my claims specifically in your 10-K. And I know from the Court's questions, you're already attuned to the argument there. When Ms. Rocheleau complained to the OFCCP, she asked for $4,600 in wages and an ergonomic workstation. In the declaration of our CFO, Mr. Lin, Mark Lin, he recites uncontradicted that the materiality standard for reporting a claim, a litigation claim under SEC rules, is roughly 10% of your assets, which at the time in Michael Semey's case would have been a claim for $43 million. So this claim that she made to the OFCCP was nowhere close to material on its face at the time it was made. And as the Court also noted, the final outcome of that was the proverbial slap on the wrist. Even the OFCCP, this is in the record without dispute, the OFCCP said these were technical violations. Improve the process by which you review job descriptions and do a better job posting a job opening so that individuals with disabilities can apply. But finally, I submit that this argument that Michael Semey somehow violated its reporting obligation, it collapses of its own weight because of the timing. So plaintiff or appellant complained in January and February of 2010, but the 10K for that year was not due until the end of the fiscal year in November of 2011. So it would be, in effect, impossible for somebody to say you violated your reporting obligation at that early time, nine months earlier. If the Court has no further questions, I will waive my remaining time. Any questions? I take that. Thank you, Your Honors. Thank you, Counsel. Supposing Counsel has, I think, a few minutes here. And while you're coming up, let me ask you about the materiality point. Your opponent notes that under the SEC's materiality standards and the accounting profession's standards, the claim would have had to involve millions of dollars. And he alleges that your client had a claim for, I think it was like $4,500 plus an ergonomic chair. Is that incorrect? It's partially incorrect, Your Honor, because it's a red herring designed to throw the Court off of what the actual issues are in this case. That was a complaint that she made regarding her particular work area. The complaint at issue in this case involves its false reporting to the OFCCP, from which it derived between 28 and 40 percent of its $500 million income from the contracts with the United States government. That gets back to the capital punishment that Judge Owen's been to. Unless someone reasonably believed that the company would get the death penalty, doesn't that undercut your argument? No, Your Honor, because in the cases on the Sarbanes-Oxley Act, number one, the employee does not have to be correct even about whether it was illegal. They have to have an objectively reasonable belief. Ms. Rochlow has over 20 years in human resources experience. Well, let's just say hypothetically that your client doesn't really know much about law and doesn't know much about what would objectively constitute a violation of law. If she believed that black was white and white was green, but really believed it, would she stumble on the objective part? Because the, if you will, the powers would be, would say, no, that's not right. That's a different color. Wouldn't that undercut her argument? That would go to her subjective belief, Your Honor. But with respect to her objective belief, the best evidence we have in this case is that the OFCCP did find Microsemi was violating the regulations that it was supposed to comply with in order to keep its contracts with the United States government. There does not, in the case law that we cited, particularly in Van Asdel and in Sylvester, the plaintiff was permitted to proceed to a jury based on far less than a federal agency finding that there was indeed a violation of law. In this case, the Senior Vice President of Human Resources, John Holtrust, testified at his deposition, which is cited in the record, that the items that Ms. Roeschler complained about were, quote, very serious with respect to the OFCCP. Which was just 13 days, less than two weeks, before her actual termination in this case. I think that differing parties can certainly raise questions of fact about what does scrub mean. My client testified that she took that to mean change the data, falsify it. Did they tell her how to falsify it? They told her to change certain things, reflecting that, in effect, that certain individuals were interviewed or hired. Not hired, excuse me. That certain individuals were interviewed. That applications were made to a group of people. When, in fact, the hiring decisions were pre-made based to a group of people that were friends with the CEO. I understand the business realities of the world. But in this case, that fact did need to be reported to the OFCCP. This was a consultant that told her to do that, or was it an employee of the company? It was a consultant, later confirmed by individuals in HR, including Mike Bondy and then Senior Vice President John Holtrust, who testified it was very serious. Okay. We thank you very much for your argument, counsel, both counsel. Thank you, Your Honor. Unless either of my colleagues have more questions, we will submit this case. Thank you both.
judges: M. Smith, Owens, Korman